[No. A079345. First Dist., Div. Four. July 31, 1998.]

FIREMAN'S FUND INSURANCE COMPANY, Plaintiff and Appellant,
v.
MARYLAND CASUALTY COMPANY et al., Defendants and Appellants.

## COUNSEL

Caron, McCormick, Constants & Goldberg, Ira David Goldberg and Harold A. Weston for Plaintiff and Appellant.

William F. Fitzgerald, Wright, Robinson, Osthimer & Tatum, James C. Nielsen and Elizabeth M. Wee for Defendants and Appellants.

## Opinion

**McGUINESS, J.**—In this case, we address the question whether the equitable doctrines of contribution and subrogation are entirely distinct and independent concepts, or instead are merely different terms for the same legal principle. Maryland Casualty Company, The Maryland Insurance Company, and Northern Insurance Company of New York (hereinafter collectively referred to as Maryland) appeal from summary judgment entered in favor of Fireman's Fund Insurance Company (Fireman's Fund) on the latter's complaint for contribution and indemnification from Maryland for the costs of defending and settling an underlying lawsuit on behalf of a common insured. Maryland argues that Fireman's Fund's claims for indemnity and contribution are actually based on its equitable subrogation to the rights of the common insured against Maryland. Because those rights have been settled, released and dismissed with prejudice in previous litigation between Maryland and the insured, Maryland insists there are no longer any remaining rights against Maryland to which Fireman's Fund may be subrogated. Therefore, Maryland contends, the trial court erred in granting summary judgment against it on Fireman's Fund's lawsuit for equitable contribution. We disagree with Maryland, and therefore affirm the judgment in favor of Fireman's Fund. Both insurers have also appealed the trial court's allocation of defense and indemnification costs between them. We conclude the trial court did not err in this regard, and therefore affirm the court's equitable allocation.

### I. Factual and Procedural Background

The underlying facts are not in dispute. Maryland and Fireman's Fund issued several one-year liability insurance polices to the underlying insured, Horst Hanf and Horst Hanf Construction Corporation (Hanf) between 1975 and 1992. Coverage of Hanf under the two carriers' policies overlapped, with Maryland's policies in effect between 1975 and 1986, and those of Fireman's Fund in effect between 1984 and 1992.

Hanf participated in work on a condominium construction project completed in 1975. In 1993, Hanf and others involved in the project were sued on various claims arising from alleged defects in the construction of the condominium residences, with damage alleged to have commenced in September 1979. Hanf tendered defense of the lawsuit to both Maryland and Fireman's Fund, under their overlapping and consecutive policies dating from November 14, 1978, through November 14, 1992. Maryland declined tender. Fireman's Fund accepted under a reservation of rights, and ultimately settled the action on Hanf's behalf for $100,000.

In January 1995, Hanf sued Maryland for breach of contract and of the implied covenant of good faith and fair dealing for refusing to undertake the defense of the underlying construction defect lawsuit. In September 1996, Hanf settled its lawsuit against Maryland, releasing Maryland from all claims with respect to the tender of defense and its liability policy, and dismissing the lawsuit with prejudice. In consideration for this release, Maryland paid Hanf $33,000 as partial reimbursement for fees and costs incurred, and assumed responsibility for a $50,000 promissory note executed by Hanf in favor of Fireman's Fund as part of the settlement of the underlying construction defect lawsuit.

Fireman's Fund elected not to intervene or join in Hanf's suit against Maryland. Instead, it brought this separate lawsuit against Maryland in May 1995, seeking (1) a judicial determination of the issue whether Maryland had a duty to defend and indemnify Hanf; and (2) reimbursement, indemnification and contribution from Maryland of its pro rata share of the costs incurred by Fireman's Fund in the defense and settlement of the underlying construction defect action against Hanf. Fireman's Fund moved for summary judgment. Maryland opposed the motion on the ground that any equitable subrogation rights Fireman's Fund may have had as against Maryland were extinguished by Hanf's full release of Maryland from all claims arising from its refusal to defend and indemnify Hanf in the underlying action. In reply, Fireman's Fund argued that a claim for contribution is distinct from and independent of a claim based on subrogation, and its action against Maryland was based on the former and not the latter.

The trial court agreed with Fireman's Fund on the distinction between equitable subrogation and contribution. On this basis, it determined that Maryland was required to share in the costs of defending and settling the construction defect action against Hanf. It therefore entered summary judgment in favor of Fireman's Fund and against Maryland in the amount of $366,506.70, or one-half of the expenses of defending and settling the underlying lawsuit plus prejudgment interest. Maryland timely filed a notice of appeal. Fireman's Fund has cross-appealed, alleging that the trial court erred in its calculation of the two carriers' pro rata shares of the costs of defending and settling the underlying action.

## II. EQUITABLE CONTRIBUTION

The principal issue raised by Maryland's appeal is whether one insurer's claim against another for contribution of the costs of defending and settling a claim against the insured is based on the theory of equitable subrogation, and is therefore dependent on and limited by the underlying

rights of the insured, to which both insurers may be subrogated; or whether instead an insurer possesses a direct cause of action for equitable contribution entirely independent of the rights of the insured. The parties to this appeal agree that if subrogation applies, the judgment for Fireman's Fund should be reversed and judgment entered instead for Maryland; if not, then the judgment must be affirmed as it stands.[1]

We conclude that where two or more insurers independently provide primary insurance on the same risk for which they are both liable for any loss to the same insured, the insurance carrier who pays the loss or defends a lawsuit against the insured is entitled to equitable contribution from the other insurer or insurers, without regard to principles of equitable subrogation. As a corollary to this principle, we hold that one insurer's settlement with the insured is not a bar to a separate action against that insurer by the other insurer or insurers for equitable contribution or indemnity.

Maryland's arguments are based on a misreading of dicta in the California Supreme Court's decision in *Continental Cas. Co.* v. *Zurich Ins. Co.* (1961) 57 Cal.2d 27 [17 Cal.Rptr. 12, 366 P.2d 455], a leading opinion on the obligation of coinsurers for equitable contribution to the costs of an insured's defense. In *Continental*, three different insurance carriers separately issued liability polices to a timber company, an independent contractor hired by the company to log and haul timber for it, and another company from whom the independent contractor hired trucks to haul the logs. An employee of the trucker was injured and sued the independent contractor for damages.

[1]In oral argument, counsel for Maryland asserted that the central issue in this case is whether the "single action rule" against "splitting" a cause of action bars Fireman's Fund from proceeding against Maryland for contribution, because of the failure of Fireman's Fund to intervene in or join with Hanf in the latter's previous lawsuit against Maryland. This issue is barely mentioned in Maryland's briefs on appeal, which instead repeatedly emphasize that "[t]he narrow issue on [its] appeal . . . is whether California law permits an insurer to assert rights against an otherwise unrelated insurer beyond or in addition to the rights of their mutual policyholder," and "the real issue here is whether one insurer's claim against another for 'contribution' necessarily depends upon the vehicle of subrogation to the insured's rights, or whether such an insurer owns a direct right of action independent of the rights of its insured." On the basis of this premise, Maryland's briefs insist that "[i]f subrogation applies, the judgment should be reversed and judgment entered instead for Maryland; if not, then the judgment should be affirmed."

Maryland's briefs are correct in insisting that the relation between contribution and subrogation is dispositive. Our decision that Fireman's Fund had an independent cause of action against Maryland for equitable contribution, regardless of the subrogation effect of the insured's release of Maryland in the previous lawsuit, renders the single action rule immaterial. The claim of Fireman's Fund against Maryland for equitable contribution is entirely separate, distinct and independent from Hanf's claim against Maryland for breach of contract and the implied covenant of good faith and fair dealing. Thus, Fireman's Fund could not have violated the single action rule by failing to join in Hanf's lawsuit and subsequently suing Maryland for contribution.

The independent contractor tendered the defense of the action to all three insurance carriers, but only one undertook the defense. Thereafter, that insurer filed an action for declaratory relief to determine the respective liabilities of the three contesting insurance companies with respect to both indemnification of the judgment in the underlying personal injury suit and the costs of defense. (*Id.* at p. 31.)

The Supreme Court held that all three liability insurance polices covered the independent contractor as an "additional insured," the liability policy covering the trucker provided primary coverage for the injured party, and the carriers for the timber company and the independent logger were liable on a pro rata basis for the excess balance of the personal injury liability judgment against the independent contractor over and above the amount of the primary coverage. (*Continental Cas. Co.* v. *Zurich Ins. Co., supra,* 57 Cal.2d at pp. 34-35.) However, the Supreme Court held that all three insurance carriers were liable on a *pro rata* basis for the costs of defense. In language cited by both parties to this appeal, the Supreme Court stated: "Under general principles of equitable subrogation, as well as pursuant to the rule of prime importance—that the policy is to be liberally construed to provide coverage to the insured—it is our view that all obligated carriers who have refused to defend should be required to share in costs of the insured's defense, whether such costs were originally paid by the insured himself or by fewer than all of the carriers. A contrary result would simply provide a premium or offer a possible windfall for the insurer who refuses to defend, and thus, by leaving the insured to his own resources, enjoys a chance that the costs of defense will be provided by some other insurer at no expense to the company which declines to carry out its contractual commitments. . . . '[T]here are . . . compelling reasons for allowing recovery when the other insurer has not entered the case at all or has refused to defend the insured against suit by the injured party. . . . [T]his view represents the current trend and better rule in the "volunteer" situations.' " (*Id.* at p. 37.)

Relying on the Supreme Court's reference to the "general principles of equitable subrogation" in the above quoted language from *Continental,* Maryland argues in this case that contribution among insurers requires that (a) the first insurer seeking contribution be subrogated to the rights of the insured against the second insurer from which contribution is sought, and (b) the insured possess a valid and existing claim against the second insurer. Maryland contends that Fireman's Fund cannot establish these requirements, because the insured (Hanf) has already sued, settled with and released Maryland from further liability. Because Fireman's Fund failed to intervene in Hanf's lawsuit against Maryland and the insured no longer has any valid and existing claims against Maryland, it argues that Fireman's Fund is

" 'subrogated to nothing' " and consequently barred from seeking equitable contribution. Maryland has confused the concepts of equitable contribution and equitable subrogation, and is incorrect on the law.

As one California appellate court has opined, "[i]t is hard to imagine another set of legal terms with more soporific effect than indemnity, subrogation, contribution, co-obligation and joint tortfeasorship." (*Herrick Corp.* v. *Canadian Ins. Co.* (1994) 29 Cal.App.4th 753, 756 [34 Cal.Rptr.2d 844] (opn. of Sills, P. J.).)[2] It is also difficult to think of two legal concepts that have caused more confusion and headache for both courts and litigants than have contribution and subrogation. (Croskey et al., Cal. Practice Guide: Insurance Litigation 2 (The Rutter Group 1997) ¶¶ 9:7-9:15, pp. 9-2 to 9-4.) ■ Although the concepts of contribution and subrogation are both equitable in nature, they are nevertheless distinct. (*Truck Ins. Exchange* v. *Superior Court* (1997) 60 Cal.App.4th 342, 349-350 [70 Cal.Rptr.2d 255]; *Herrick Corp.* v. *Canadian Ins. Co., supra,* 29 Cal.App.4th at pp. 759-766; *California Food Service Corp.* v. *Great American Ins. Co.* (1982) 130 Cal.App.3d. 892, 898-902 [182 Cal.Rptr. 67]; *Patent Scaffolding Co.* v. *William Simpson Constr. Co.* (1967) 256 Cal.App.2d 506, 510-517 [64 Cal.Rptr. 187]; *Fireman's etc. Co.* v. *State Comp. etc. Fund* (1949) 93 Cal.App.2d 408, 411-412 [209 P.2d 55]; 16 Couch on Insurance (2d ed. 1983) Subrogation, §§ 61:1, 61:4, 61:18, 61:32, 61:34, 61:36-61:38, pp. 74-75, 77-79, 93-94, 115-116, 117-118, 118-122; 16 Couch on Insurance, *supra,* Contribution & Apportionment, §§ 62:1-62:5, 62:142-62:145, 62:151-62:153, 62:156, 62:162, pp. 433-440, 611-617, 621-624, 626-627, 631; Croskey et al., *supra,* ¶¶ 8:65-8:69, 9:7-9:16, 9:61-9:69, pp. 8-14 to 8-17, 9-2 to 9-4, 9-16 to 9-18; 11 Witkin, Summary of Cal. Law (9th ed. 1990) Equity, §§ 167-174, pp. 847-857.)

■ Subrogation is defined as the substitution of another person in place of the creditor or claimant to whose rights he or she succeeds in relation to the debt or claim. By undertaking to indemnify or pay the principal debtor's obligation to the creditor or claimant, the "subrogee" is equitably *subrogated* to the claimant (or "subrogor"), and succeeds to the subrogor's rights against the obligor. (Black's Law Dict. (6th ed. 1990) p. 1427, col. 1.) In the case of insurance, subrogation takes the form of an insurer's right to be put in the position of the insured in order to pursue recovery from third parties legally responsible to the insured for a loss which the insurer has both insured and

---

[2]"Perhaps because the words describe legal relationships between multiple parties, they are vaguely reminiscent of complex mathematical equations which, after all, also describe relationships, except in numbers rather than words—and for most of us, they are about as easy to understand. Even lawyers find words like 'indemnity' and 'subrogation' ring of an obscure Martian dialect." (*Id.* at p. 756.)

paid. (*Allstate Ins. Co.* v. *Loo* (1996) 46 Cal.App.4th 1794, 1799 [54 Cal.Rptr.2d 541]; *Liberty Mut. Fire Ins. Co.* v. *Auto Spring Supply Co.* (1976) 59 Cal.App.3d 860, 864 [131 Cal.Rptr. 211]; *Fireman's etc. Co.* v. *State Comp. etc. Fund, supra,* 93 Cal.App.2d at p. 412; 16 Couch on Insurance, *supra,* Subrogation, §§ 61:2, 61:36, at pp. 75-76, 118-120; 11 Witkin, Summary of Cal. Law, *supra,* Equity, § 169, pp. 848-850.) " 'As now applied [the doctrine of equitable subrogation] is broad enough to include every instance in which one person, not acting as a mere volunteer or intruder, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter.' [Citations.]" (*Caito* v. *United California Bank* (1978) 20 Cal.3d 694, 704 [144 Cal.Rptr. 751, 576 P.2d 466].)

■ The essential elements of an insurer's cause of action for equitable subrogation are as follows: (a) the insured suffered a loss for which the defendant is liable, either as the wrongdoer whose act or omission caused the loss or because the defendant is legally responsible to the insured for the loss caused by the wrongdoer; (b) the claimed loss was one for which the insurer was *not* primarily liable; (c) the insurer has compensated the insured in whole or in part for the same loss for which the defendant is primarily liable; (d) the insurer has paid the claim of its insured to protect its own interest and not as a volunteer; (e) the insured has an existing, assignable cause of action against the defendant which the insured could have asserted for its own benefit had it not been compensated for its loss by the insurer; (f) the insurer has suffered damages caused by the act or omission upon which the liability of the defendant depends; (g) justice requires that the loss be entirely shifted from the insurer to the defendant, whose equitable position is inferior to that of the insurer; and (h) the insurer's damages are in a liquidated sum, generally the amount paid to the insured. (*Caito* v. *United California Bank, supra,* 20 Cal.3d at p. 704; *Fireman's Fund Ins. Co.* v. *Wilshire Film Ventures, Inc.* (1997) 52 Cal.App.4th 553, 555-556 [60 Cal.Rptr.2d 591]; *Patent Scaffolding Co.* v. *William Simpson Constr. Co., supra,* 256 Cal.App.2d at p. 509; *Grant* v. *de Otte* (1954) 122 Cal.App.2d 724, 728 [265 P.2d 952]; 11 Witkin, Summary of Cal. Law, *supra,* Equity, § 169, p. 849.)

■ The right of subrogation is purely derivative. An insurer entitled to subrogation is in the same position as an assignee of the insured's claim, and succeeds only to the rights of the insured. The subrogated insurer is said to " 'stand in the shoes' " of its insured, because it has no greater rights than the insured and is subject to the same defenses assertable against the insured. Thus, an insurer cannot acquire by subrogation anything to which the insured has no rights, and may claim no rights which the insured does not have. (*Truck Ins. Exchange* v. *Superior Court, supra,* 60 Cal.App.4th at pp.

349-350; *Allstate Ins. Co. v. Loo, supra,* 46 Cal.App.4th at p. 1799; *Fireman's Fund Ins. Co. v. Maryland Casualty Co.* (1994) 21 Cal.App.4th 1586, 1595-1596 [26 Cal.Rptr.2d 762]; *Patent Scaffolding Co. v. William Simpson Constr. Co., supra,* 256 Cal.App.2d at p. 510; 16 Couch on Insurance, *supra,* Subrogation, §§ 61:36-61:38, pp. 118-122; 11 Witkin, Summary of Cal. Law, *supra,* Equity, §§ 169-174, pp. 848-857.)

■ Equitable contribution is entirely different. It is the right to recover, not from the party *primarily* liable for the loss, but from a *co-obligor* who *shares* such liability with the party seeking contribution.[3] In the insurance context, the right to contribution arises when several insurers are obligated to indemnify or defend the same loss or claim, and one insurer has paid more than its share of the loss or defended the action without any participation by the others. Where multiple insurance carriers insure the same insured and cover the same risk, each insurer has independent standing to assert a cause of action against its coinsurers for equitable contribution when it has undertaken the defense or indemnification of the common insured. Equitable contribution permits reimbursement to the insurer that paid on the loss for the excess it paid over its proportionate share of the obligation, on the theory that the debt it paid was *equally* and *concurrently* owed by the other insurers and should be shared by them pro rata in proportion to their respective coverage of the risk. The purpose of this rule of equity is to accomplish substantial justice by equalizing the common burden shared by coinsurers, and to prevent one insurer from profiting at the expense of others. (Civ. Code, § 1432; *Signal Companies, Inc. v. Harbor Ins. Co.* (1980) 27 Cal.3d 359, 369 [165 Cal.Rptr. 799, 612 P.2d 889, 19 A.L.R.4th 75]; *Maryland Casualty Co. v. Nationwide Ins. Co.* (1998) 65 Cal.App.4th 21, 26-27 [76 Cal.Rptr.2d 113]; *Golden Eagle Ins. Co. v. Foremost Ins. Co.* (1993) 20 Cal.App.4th 1372, 1390 [25 Cal.Rptr.2d 242]; *California Food Service Corp. v. Great American Ins. Co., supra,* 130 Cal.App.3d at pp. 901-902; 16 Couch

---

[3]This right is codified in Civil Code section 1432, which states: "Except as provided in Section 877 of the Code of Civil Procedure, a party to a joint, or joint and several obligation, who satisfies more than his share of the claim against all, may require a proportionate contribution from all the parties joined with him."

Under Code of Civil Procedure section 877, a release, dismissal or covenant not to sue or not to enforce a judgment, given in good faith to one or more of a number of joint tortfeasors, "or to one or more other co-obligors mutually subject to contribution rights," has the effect of discharging the party to whom it was given from all liability for any contribution to any other parties. (Code Civ. Proc., § 877, subd. (b).) Insurance carriers are neither joint tortfeasors nor "co-obligors"; their obligations arise strictly out of separate contracts with their insureds. (*Topa Ins. Co. v. Fireman's Fund Ins. Companies* (1995) 39 Cal.App.4th 1331, 1336-1344 [46 Cal.Rptr.2d 516].) Thus, this statute does not limit one insurance carrier's claim against another carrier for equitable contribution, and is inapplicable here.

on Insurance, *supra,* Contribution & Apportionment, § 62:142, at pp. 611-612.)[4]

■　This right of equitable contribution belongs to each insurer individually. It is not based on any right of subrogation to the rights of the insured, and is not equivalent to " 'standing in the shoes' " of the insured. (*Truck Ins. Exchange* v. *Superior Court, supra,* 60 Cal.App.4th at p. 350; *Pylon, Inc.* v. *Olympic Ins. Co.* (1969) 271 Cal.App.2d 643, 648-649 [77 Cal.Rptr. 72]; Croskey et al., Cal. Practice Guide: Insurance Litigation 2, *supra,* ¶¶ 9.11-9:15, at pp. 9-3 to 9-4; 11 Witkin, Summary of Cal. Law, *supra,* Equity, § 168, pp. 847-848.) Instead, the reciprocal contribution rights of coinsurers who insure the same risk are based on the equitable principle that the burden of indemnifying or defending the insured with whom each has independently contracted should be borne by all the insurance carriers together, with the loss equitably distributed among those who share liability for it in direct ratio to the proportion each insurer's coverage bears to the total coverage provided by all the insurance polices. (*Continental Cas. Co.* v. *Zurich Ins. Co., supra,* 57 Cal.2d at pp. 34-38; *Fire Ins. Exchange* v. *American States Ins. Co.* (1995) 39 Cal.App.4th 653, 661-663 [46 Cal.Rptr.2d 135]; *Hartford Accident & Indemnity Co.* v. *Superior Court* (1994) 29 Cal.App.4th 435, 440 [34 Cal.Rptr.2d 520]; *Herrick Corp.* v. *Canadian Ins. Co., supra,* 29 Cal.App.4th at p. 759; *Patent Scaffolding Co.* v. *William Simpson Constr. Co., supra,* 256 Cal.App.2d at pp. 514, 517; Croskey et al., *supra,* ¶¶ 8:66-8:69, at pp. 8-14 to 8-17; 11 Witkin, Summary of Cal. Law, *supra,* Equity, § 168, pp. 847-848.) "As a matter of equity, insurers of the 'same

---

[4]Insurance policies sometimes provide that a particular coverage is "excess" only, and does not apply until the policy limits of a "primary" insurance policy have been exhausted. Under such an excess policy, the excess insurer is not liable for any part of the loss, damage or defense which is covered by other primary insurance, but instead is liable for any loss or damage *in excess* of the coverage provided by the other primary insurance policy or policies. The doctrine of equitable contribution applies to insurers who share the *same* level of obligation on the *same* risk as to the *same* insured. As a general rule, there is no contribution between primary and excess carriers of the same insured absent a specific agreement to the contrary. Courts in equitable contribution cases have generally heeded primary/excess provisions in insurance contracts, as long as the rights of the policyholder are not adversely affected. (*Signal Companies, Inc.* v. *Harbor Ins. Co., supra,* 27 Cal.3d at pp. 367-368; *Nabisco, Inc.* v. *Transport Indemnity Co.* (1983) 143 Cal.App.3d 831, 835-836 [192 Cal.Rptr. 207]; 16 Couch on Insurance, *supra,* Contribution & Apportionment, §§ 62:41, 62:48, 62:142, 62:144, pp. 475, 484-488, 611-612, 613-615.) On the other hand, when different primary insurers' policies contain conflicting "excess other insurance" clauses and there is danger the insured will be deprived of protection if the conflicting clauses are enforced, or other equitable factors favoring proration among insurers are present, courts will ignore the conflicting clauses and prorate the loss among the insurers following principles of equitable contribution. (*CSE Ins. Group* v. *Northbrook Property & Casualty Co.* (1994) 23 Cal.App.4th 1839, 1842-1846 [29 Cal.Rptr.2d 120]; *Olympic Ins. Co.* v. *Employers Surplus Lines Ins. Co.* (1981) 126 Cal.App.3d 593, 599 [178 Cal.Rptr. 908].) See further discussion in part III of this decision, *post.*

risk' may sue each other for contribution. [Citations.] This right is not a matter of contract, but flows ' "from equitable principles designed to accomplish ultimate justice in the bearing of a specific burden." ' [Citations.] The idea is that the insurers are 'equally bound,' so therefore they 'all should contribute to the payment.' [Citation.]" (*Herrick Corp.* v. *Canadian Ins. Co., supra,* 29 Cal.App.4th at p. 759.)

■ Unlike subrogation, the right to equitable contribution exists *independently* of the rights of the insured. It is predicated on the commonsense principle that where multiple insurers or indemnitors share equal contractual liability for the primary indemnification of a loss or the discharge of an obligation, the selection of which indemnitor is to bear the loss should not be left to the often arbitrary choice of the loss claimant, and no indemnitor should have any incentive to avoid paying a just claim in the hope the claimant will obtain full payment from another coindemnitor. (*California Food Service Corp.* v. *Great American Ins. Co., supra,* 130 Cal.App.3d at pp. 901-902; 16 Couch on Insurance, *supra,* Contribution & Apportionment, § 62:151, pp. 621-622.) Equitable contribution thus assumes the existence of two or more valid contracts of insurance covering the particular risk of loss and the particular casualty in question. The fact that several insurance policies may cover the same risk does not increase the insured's right to recover for the loss, or give the insured the right to recover more than once. Rather, the insured's right of recovery is restricted to the actual amount of the loss. Hence, where there are several policies of insurance on the same risk and the insured has recovered the full amount of its loss from one or more, but not all, of the insurance carriers, the insured has no further rights against the insurers who have not contributed to its recovery. Similarly, the liability of the remaining insurers *to the insured* ceases, even if they have done nothing to indemnify or defend the insured. They *remain* liable, however, for contribution to those insurers who have already paid on the loss or for the insured's defense.[5] (16 Couch, *supra,* Contribution & Apportionment, § 62:1, pp. 433-435.)

■ This right of equitable contribution between coinsurers is not based on, and indeed has nothing to do with, the coinsurers' subrogation to the rights of their insured against the party legally and primarily responsible for

---

[5]Where there are several insurance policies covering the same risk on the same insured, the fact the insured is only entitled to recover the actual amount of its loss does not bar it from demanding full coverage from *each* insurer, as long as its demand is made in good faith. By the same token, the insured may obtain recovery from any *one* of its coinsurers for the entire loss, not in excess of the face amount of the policy and in the absence of any provision in the policies limiting liability to a proportionate share of the loss. The coinsurers would then have no further liability to the insured, but *would* be liable for equitable contribution to the carrier which paid the loss. (16 Couch on Insurance, *supra,* Contribution & Apportionment, § 62:1, pp. 433-435.)

the loss. Whereas subrogation requires that the party to be charged be in an "equitable position . . . inferior to that of the insurer" such that justice requires the entire loss be shifted from the insurer to the party to be charged (*Fireman's Fund Ins. Co.* v. *Wilshire Film Ventures, Inc., supra,* 52 Cal.App.4th at p. 556), contribution permits liability for the loss to be allocated among the various insurers without regard to questions of comparative fault or the relative equities between the insurers. (*Hartford Accident & Indemnity Co.* v. *Superior Court, supra,* 29 Cal.App.4th at pp. 440-441 [insurer has right to contribution from coinsurers without reference to any questions of comparative fault, negligence or bad faith between the coinsurers]; *California Food Service Corp.* v. *Great American Ins. Co., supra,* 130 Cal.App.3d at pp. 899-902 [insurer has right to equitable contribution from its coinsurer even though it does not have "an equitable position superior" to the coinsurer]; cf. *Fireman's Fund Ins. Co.* v. *Wilshire Film Ventures, Inc., supra,* 52 Cal.App.4th at pp. 556, 558 [insurer's right to subrogation requires finding the "equitable position" of party to whom loss is to be shifted is "inferior to that of the insurer" seeking subrogation]; *Patent Scaffolding Co.* v. *William Simpson Constr. Co., supra,* 256 Cal.App.2d at p. 509 [same].) "[T]he 'true nature of subrogation' is that ' "it is applied in all cases in which 'one party pays a debt for which another is *primarily* answerable, and which, in equity and good conscience, should have been discharged by the latter.' . . ." ' [Citation.]" (*Fireman's Fund Ins. Co.* v. *Wilshire Film Ventures, Inc., supra,* 52 Cal.App.4th at p. 558, italics added.)

■ The different equitable principles on which contribution and subrogation are based are reflective of different underlying public policies. The aim of equitable subrogation is to place the burden for a loss on the party ultimately liable or responsible for it and by whom it should have been discharged, and to relieve entirely the insurer or surety who indemnified the loss and who in equity was *not* primarily liable therefor. (*Caito* v. *United California Bank, supra,* 20 Cal.3d at p. 704; 11 Witkin, Summary of Cal. Law, *supra,* Equity, § 169, pp. 848-850.) On the other hand, the aim of equitable contribution is to apportion a loss between two or more insurers who cover the same risk, so that each pays its fair share and one does not profit at the expense of the others. (Civ. Code, § 1432; *Signal Companies, Inc.* v. *Harbor Ins. Co., supra,* 27 Cal.3d at pp. 369; *Maryland Casualty Co.* v. *Nationwide Ins. Co., supra,* 65 Cal.App.4th at p. 26-27; *Golden Eagle Ins. Co.* v. *Foremost Ins. Co., supra,* 20 Cal.App.4th at p. 1390; 11 Witkin, Summary of Cal. Law, *supra,* Equity, § 168, pp. 847-848.) Although these underlying policy aims may be similar, they are nonetheless distinct. Confusing the doctrines with each other necessarily blurs the corresponding policies behind them, with the unintended result in some cases of defeating those very policy goals.

For this reason, our adoption of Maryland's contention that contribution is merely a subset or type of equitable subrogation would have several unintended results. As discussed, where there are multiple primary liability insurance policies covering the same risk each insurance carrier has an independent obligation to indemnify and an independent duty to defend the insured. However, once one insurer assumes its obligations to its insured for indemnification or defense costs, the insured no longer has any motivation to pursue its claim for those costs against a nonparticipating insurer. The result Maryland advocates in this case would actually encourage primary insurers covering the same risk to delay responding to an insured's tender of defense or request for indemnification until some other carrier accepts the tender, in the hope of subsequently making a more advantageous settlement with the insured. The outcome of a given case could be made to depend on such chance factors as which insurance carrier the insured happened to tender its defense to first, or the insured's willingness to pursue its rights against a recalcitrant insurance carrier, rather than each carrier's actual obligation under its individual contract with the insured to provide coverage and a defense. By such fortuities, one insurance carrier could be unfairly relieved of its rightful obligations while another insurer was burdened with the entire loss and deprived of its right to contribution, in derogation of the public policies of encouraging insurers to assume their duty to defend and promptly indemnify their insureds in good faith. Such a result would, of course, also be directly contrary to the principles expressed in *Continental Cas. Co. v. Zurich Ins. Co., supra,* 57 Cal.2d at page 37.

Many appellate decisions illustrate the distinction between contribution and subrogation. (*Maryland Casualty Co. v. Nationwide Ins. Co., supra,* 65 Cal.App.4th at pp. 26-27; *Truck Ins. Exchange v. Superior Court, supra,* 60 Cal.App.4th at p. 350; *Fireman's Fund Ins. Co. v. Wilshire Film Ventures, Inc., supra,* 52 Cal.App.4th at pp. 556, 558; *Herrick Corp. v. Canadian Ins. Co., supra,* 29 Cal.App.4th at pp. 759-766; *Hartford Accident & Indemnity Co. v. Superior Court, supra,* 29 Cal.App.4th at pp. 439-441; *California Food Service Corp. v. Great American Ins. Co., supra,* 130 Cal.App.3d at pp. 899-902; *Patent Scaffolding Co. v. William Simpson Constr. Co., supra,* 256 Cal.App.2d at p. 509.) In other cases, the distinction is not as clear. A good example of the inherent difficulties of distinguishing between the doctrines may be seen in the decision in *State Farm & Casualty Co. v. Cooperative of American Physicians, Inc.* (1984) 163 Cal.App.3d 199 [209 Cal.Rptr. 251] (*American Physicians*). *American Physicians* is cited in Witkin's Summary of California Law for the principle that "[o]ne insurer is entitled to subrogation against another where the first has defended and settled a third party claim against their common insured." (11 Witkin, Summary of Cal. Law, *supra,* Equity, § 170, p. 851.) At first blush, such a holding would appear to support

appellant Maryland's contention that contribution among insurers is essentially identical to subrogation. Upon closer inspection, however, *American Physicians* actually illustrates the difference between contribution and subrogation.

*American Physicians* concerned the relative obligations of two insurance companies insuring the same insured, but for entirely *different* risks. The plaintiff in the underlying personal injury lawsuit sued her doctor and his medical group on both malpractice *and* premises liability causes of action. At the time of the accident, the medical group and its member physicians were insured for premises liability by one insurance carrier, and for professional liability by two other insurance carriers. The premises liability insurer's policy expressly excluded coverage for medical malpractice claims. After the malpractice insurers refused to contribute to settlement, the premises liability insurer sued on a theory of equitable subrogation for a declaration of coverage and reimbursement of the amount it had paid in settlement of the underlying suit. The malpractice insurers demurred, arguing that subrogation was unavailable because the carriers were *not* coinsurers and the insured risks were *not* identical. The trial court sustained the demurrer without leave to amend. (*American Physicians, supra,* 163 Cal.App.3d at p. 203.) The Court of Appeal reversed, easily rejecting the argument that equitable subrogation is available only "where both the insured and the risks covered are identical in each policy. . . ." (*Id.* at p. 204.) The court held that in cases "involving disputes between carriers insuring the same policyholder, but for different interests," an insurer that "fulfilled its legal obligation to defend and settle" a third party claim on behalf of its insured assumes the position of its insured by paying the claim, and may sue the other insurers in a separate action "to adjudicate the factual merits of the coverage issue" between them. (*Id.* at pp. 204-205.)

Properly read, *American Physicians* stands for the principle that where different insurance carriers cover *different* risks and liabilities with respect to the same insured, they may proceed against each other for reimbursement by subrogation rather than by contribution. As discussed, contribution is only available in cases where there are coinsurers who share the same level of obligation on the *same* risk. One insurer has no right of contribution from another insurer with respect to its payment on an obligation for which it was *primarily* responsible, and as to which the liability of the second insurer was only *secondary*. (*Herrick Corp.* v. *Canadian Ins. Co., supra,* 29 Cal.App.4th at p. 759; 16 Couch on Insurance, *supra*, Contribution & Apportionment, §§ 62:142-62:144, pp. 611-615.) In *American Physicians*, the three insurance carriers did not cover the same claims, risks or liabilities. The two malpractice insurers clearly had primary responsibility for the malpractice cause of

action, as to which the premises liability insurer had (at most) secondary responsibility. It necessarily follows that equitable contribution was unavailable in that case. On the other hand, this is precisely the kind of situation to which equitable subrogation applies, since the claimed loss was one for which the premises liability insurer was *not* primarily liable, and justice required that that loss be shifted to the parties (in this case, the malpractice insurers) whose equitable position was inferior. (*Fireman's Fund Ins. Co.* v. *Wilshire Film Ventures, Inc., supra,* 52 Cal.App.4th at pp. 556-558.) It was actually the parties in *American Physicians* who had confused contribution and subrogation, not the court.

Another example of the differing factual contexts in which the courts apply contribution and subrogation is provided by *Commercial Union Assurance Companies* v. *Safeway Stores, Inc.* (1980) 26 Cal.3d 912 [164 Cal.Rptr. 709, 610 P.2d 1038] (*Safeway Stores*). Both in its briefs and in oral argument, Maryland has cited isolated language from this case in support of its assertions that there is no independent right of action between insurers for equitable contribution, and that an insurance carrier's right to sue another insurer covering the same risk is based solely on the extent to which the first carrier is subrogated to the rights of the insured.[6]

In fact, *Safeway Stores* has nothing to do with equitable contribution between insurers covering the same risk. Instead, the case deals with the entirely different issue of whether an *insured* owes a duty to its *excess* liability insurance carrier to accept a settlement offer within the policy limits of the primary insurer and below the threshold level at which the excess carrier's exposure commences. (*Safeway Stores, supra,* 26 Cal.3d at p. 915.) *Safeway Stores* holds that an excess insurance policy imposes no such implied duty on the insured to accept a settlement offer which would avoid exposing the excess insurer to liability. (*Id.* at pp. 918-921.) In passing, the Supreme Court mentioned that the right of an *excess* insurance carrier to maintain an action against a *primary* carrier for the latter's wrongful refusal to settle within the policy limits of the primary policy is based on equitable subrogation. As in *American Physicians,* this conclusion necessarily follows from the subrogation principle that responsibility for a loss should be shifted

---

[6]"It has been held in California and other jurisdictions that the excess carrier may maintain an action against the primary carrier for . . . [wrongful] refusal to settle within the latter's policy limits [citations]. This rule, however, is based on the theory of equitable subrogation: Since the insured would have been able to recover from the primary carrier for a judgment in excess of policy limits caused by the carrier's wrongful refusal to settle, the excess carrier, who discharged the insured's liability as a result of this tort, stands in the shoes of the insured and should be permitted to assert all claims against the primary carrier which the insured himself could have asserted [citation]. Hence, the rule does not rest upon the finding of any separate duty owed to an excess insurance carrier." (*Safeway Stores, supra,* 26 Cal.3d pp. 917-918.)

from the party paying the claim to the party primarily liable in the first instance. Once again, equitable contribution is only available where coinsurers share the *same primary* level of liability on the same risk. Consequently, in the absence of an express agreement to the contrary, there is *never* any right to contribution between primary and excess carriers of the same insured. (*Signal Companies, Inc.* v. *Harbor Ins. Co., supra,* 27 Cal.3d at pp. 367-368.) In short, *Safeway Stores* is not a contribution case at all, and in no way supports the asserted proposition for which Maryland cites it.

As we indicated at the outset, Maryland's position in this case is based on the Supreme Court's reference to "general principles of equitable subrogation" in *Continental Cas. Co.* v. *Zurich Ins. Co., supra,* 57 Cal.2d 27. In our opinion, this passing reference to subrogation, made in the context of a decision otherwise dealing strictly with the right to equitable contribution between coinsurers sharing primary liability on the same risk, was entirely unnecessary to the Supreme Court's decision in that case. The Supreme Court did not analyze or discuss the principles of equitable subrogation, or apply them to the facts of the case. Nor was it presented with a record that required it to do so. The three insurance companies in that case had all issued liability policies covering the same risks. The Supreme Court specifically found moreover that all three policies provided coverage for the same insured. (*Id.* at pp. 31-33.) On these facts, the court concluded that all three coinsurers "should be required to share in costs of the insured's defense" on a pro rata basis. (*Id.* at p. 37.) The court based its decision, not on a conclusion that any one of the insurers stood in the shoes of the insured or was in a superior equitable position, but instead on an analysis of the shared obligations of the three insurance carriers with respect to the duty to defend their insured. Thus, the Supreme Court applied a classic equitable contribution analysis to justify a decision enforcing contribution, without any actual reliance on the principles of subrogation. The court's passing reference to "general principles of equitable subrogation" was therefore dicta. (Croskey et al., Cal. Practice Guide: Insurance Litigation 2, *supra,* ¶ 9:15, at p. 9-4.)[7]

This court is in the concededly delicate position of disagreeing with the specific language of an opinion of our own Supreme Court. We

---

[7]It is no accident that *Continental Cas. Co.* v. *Zurich Ins. Co., supra,* 57 Cal.2d 27 is frequently (and correctly) cited as one of the leading cases on the doctrine of equitable contribution of defense costs among primary liability insurers. (*California Food Service Corp.* v. *Great American Ins. Co., supra,* 130 Cal.App.3d at p. 901; *First Insurance Co. of Hawaii* v. *Continental Casualty Co.* (9th Cir. 1972) 466 F.2d 807, 811; *Wolverine Ins. Co.* v. *State Auto. Mut. Ins. Co. of Columbus, O.* (6th Cir. 1969) 415 F.2d 1182, 1184-1185; *United States Fidelity & G. Co.* v. *Millers Mut. F. Ins. Co. of Tex.* (8th Cir. 1968) 396 F.2d 569, 573 & fn. 4.) Aside from a reference at the cited paragraph of the Croskey treatise on insurance litigation, this discrepancy between the Supreme Court's contribution analysis and its use of the term "equitable subrogation" in *Continental* has apparently not been previously addressed. We suspect this is because the conceptual distinction between equitable subrogation and contribution generally has no practical impact on the ordinary contribution case. Here,

acknowledge, as we must, that we are bound to follow binding precedent of a higher court, and that the refusal to do so is in excess of our own jurisdiction. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455-456 [20 Cal.Rptr. 321, 369 P.2d 937].) However, we are not bound by dicta, particularly where it is unpersuasive and contrary to the overwhelming weight of precedent. In every case, it is necessary to read the language of an opinion in the light of its facts and the issues raised, in order to determine which statements of law were necessary to the decision, and therefore binding precedent, and which were general observations unnecessary to the decision. The latter are dicta, with no force as precedent. (*Ginns* v. *Savage* (1964) 61 Cal.2d 520, 524, fn. 2 [39 Cal.Rptr. 377, 393 P.2d 689]; *Dyer* v. *Superior Court* (1997) 56 Cal.App.4th 61, 66-68 [65 Cal.Rptr.2d 85]; *United Steelworkers of America* v. *Board of Education* (1984) 162 Cal.App.3d 823, 834 [209 Cal.Rptr. 16]; 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 945, pp. 986-988.) For the reasons discussed, we conclude the Supreme Court's use of the term "equitable subrogation" in *Continental Cas. Co.* v. *Zurich Ins. Co., supra,* 57 Cal.2d 27 was unnecessary to the decision in that case. It is therefore not binding as precedent on this court.

 In conclusion, we hold that California law recognizes a direct right of action for equitable contribution between coinsurers on the same risk,

however, the insurer from whom contribution is sought argues it was previously released by the insured, and there are therefore no rights to which the other primary insurer can be "subrogated." We have found no reported case addressing this precise scenario of an insured releasing a nonpaying insurer while accepting payment from a second insurer, which thereafter seeks contribution from the first. (Cf. *Maryland Casualty Co.* v. *Nationwide Ins. Co., supra,* 65 Cal.App.4th at pp. 26-27 [in opposing action by insurance carriers for contribution from nonpaying coinsurer for defense costs incurred, nonpaying coinsurer argued the insured had "released" any claim against it by failing to appeal summary judgment in its favor; held, insured's failure to appeal did not impair other insurance carriers' potential rights against nonpaying coinsurer under either equitable subrogation or equitable contribution theories].)

On the other hand, our research has identified several cases which do appear to confuse the concepts of equitable subrogation and contribution. (*Maryland Casualty Co.* v. *National American Ins. Co.* (1996) 48 Cal.App.4th 1822, 1829 [56 Cal.Rptr.2d 498]; *Transit Casualty Co.* v. *Spink Corp.* (1979) 94 Cal.App.3d 124, 132 [156 Cal.Rptr. 360], overruled on other grounds, *Safeway Stores, supra,* 26 Cal.3d at p. 921; *Cabral* v. *State Compensation Ins. Fund* (1970) 13 Cal.App.3d 508, 511-512 [91 Cal.Rptr. 778]; *Ohio Cas. Ins. Co.* v. *Harbor Ins. Co.* (1968) 259 Cal.App.2d 207, 218 [66 Cal.Rptr. 340]; *Utica Mut. Ins. Co.* v. *Monarch Ins. Co. of Ohio* (1967) 250 Cal.App.2d 538, 544 [58 Cal.Rptr. 639]; *Hartford Acc. & Indem. Co.* v. *Pacific Indem. Co.* (1967) 249 Cal.App.2d 432, 435-436 [57 Cal.Rptr. 492]; *Wasson* v. *Atlantic National Ins. Co.* (1962) 207 Cal.App.2d 464, 471-472 [24 Cal.Rptr. 665], overruled on other grounds, *Campbell* v. *Allstate Ins. Co.* (1963) 60 Cal.2d 303, 307 [32 Cal.Rptr. 827, 384 P.2d 155].) The references to subrogation in each of these opinions are actually dicta unnecessary to the decisions in the cases themselves, which in fact turn on classic principles of equitable contribution. Interestingly, in each of these cases the erroneous identification of contribution with subrogation can be directly traced to the dicta in *Continental Cas. Co.* v. *Zurich Ins. Co., supra,* 57 Cal.2d 27. To the extent these decisions identify contribution with subrogation or base the former doctrine upon the latter, we respectfully disagree.

entirely independent of any of the requirements for bringing a cause of action based on equitable subrogation to the rights of the insured. As both parties concede, the judgment of the trial court in this case must therefore be affirmed.

### III. ALLOCATION OF DEFENSE AND INDEMNITY COSTS

Both parties have appealed from the trial court's allocation of defense and indemnity costs. In allocating these costs between Fireman's Fund and Maryland, the trial court utilized the "time-on-the-risk" method of allocation. In its cross-appeal, Fireman's Fund contends that in calculating the amount of time Fireman's Fund was "on the risk," the trial court should not have included four of its policies because they contained "other insurance" clause endorsements which purported to make them excess polices. In its appeal, Maryland asserts the trial court erred in crediting Fireman's Fund with the full $100,000 in settlement costs it paid, and in allocating defense costs on a 50-50 basis. Under the circumstances of this case, we conclude the trial court did not err in its allocation between the parties.

### A. *Factual Background*

The pertinent facts are not in dispute. After Maryland denied tender of the underlying construction defect lawsuit, Hanf settled the suit for $100,000, paid in full by Fireman's Fund, with Hanf executing a promissory note in the amount of $50,000 in favor of Fireman's Fund. Fireman's Fund also paid Hanf's defense costs of $515,216.83 in full. Maryland did not contribute to either the settlement or the defense of the underlying action. Hanf then sued Maryland for, among other things, the $50,000 obligation on the note. To settle Hanf's suit against it, Maryland agreed to assume responsibility and hold Hanf harmless for the promissory note to Fireman's Fund, and pay Hanf $33,000 as partial reimbursement of Hanf's legal expenses in suing Maryland. However, Maryland did not concede the validity of the note or that Fireman's Fund has any right to payment thereunder. In return, Hanf agreed to release Maryland from all claims.

Neither Fireman's Fund nor Maryland ever disputed the trial court's use of the time-on-the-risk method of allocation. The parties also stipulated that during the period at issue they had written an overlapping series of consecutive one-year policies for Hanf; and that, as applicable to the liability claim against Hanf for damage commencing in September 1979, Maryland's policies were in effect between November 14, 1978, and December 18, 1986, and those of Fireman's Fund were in effect between November 14, 1984, and November 14, 1992. Each of the policies of both insurers contains an

"other insurance" clause. However, four of the policies issued by Fireman's Fund, covering the period of November 14, 1988, through November 14, 1992, contain endorsements amending their respective "other insurance" clauses to state: "This insurance is *excess* over any other insurance, whether primary or excess, contingent or on any other basis: [¶] . . . [¶] (4) That is valid and collectible insurance . . . ."[8] (Italics added.) The four earlier Fireman's Fund insurance policies, and all of Maryland's policies, contain "other insurance" clauses providing for *pro rata* computation of loss allocation among insurers, as opposed to excess coverage.

In applying the time-on-the-risk method of allocation, the trial court determined that each insurer provided eight insurance policies covering a single continuous injury over the relevant time period from September 1979 to 1992. The trial court deemed the entire period as a single continuous loss pursuant to *Montrose Chemical Corp.* v. *Admiral Ins. Co.* (1995) 10 Cal.4th 645, 669-693 [42 Cal.Rptr.2d 324, 913 P.2d 878], and fixed the two insurers' responsibility for defense and indemnity equally. In so doing, the trial court rejected the argument of Fireman's Fund that its last four policies should have been disregarded because they contained "excess other insurance" clauses. Based on a 50-50 allocation of the $100,000 indemnification

---

[8]As amended by the relevant endorsement, the Fireman's Fund "other insurance" clause on its last four polices reads in pertinent part as follows:

"4. Other Insurance

"If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

"a. Primary insurance.

"This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

"b. Excess insurance

"This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

" . . . . . . . . . . . . . . . . . . . . .

"(4) That is valid and collectible insurance including but not limited to coverage as an additional insured under another policy against such losses as may be covered by this policy.

"When this insurance is excess, we will have no duty under Coverage A or B to defend any claim or 'suit' that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

"When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

"(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

"(2) The total of all deductible and self-insured amounts under all that other insurance.

"We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part."

amount paid by Fireman's Fund in settlement and the $515,216.83 it incurred in defense costs, the trial court awarded Fireman's Fund $307,608.42, plus prejudgment interest.

### B. Fireman's Fund Cross-appeal: Effect of "Excess Other Insurance" Clauses

■ " 'Most insurance policies contain "other insurance" clauses that attempt to limit the insurer's liability where other insurance covers the same risk. Such clauses attempt to control the manner in which each insurer contributes to or shares a covered loss.' [Citation.]" (*Fire Ins. Exchange* v. *American States Ins. Co., supra,* 39 Cal.App.4th at p. 659, fn. 1.) Historically, "other insurance" clauses were designed to prevent multiple recoveries when more than one policy provided coverage for a particular loss. (Croskey et al., Cal. Practice Guide: Insurance Litigation 2, *supra,* ¶ 8:10, p. 8-2.) " '[T]he application of "other insurance" clauses requires, as a foundational element, that there exist multiple policies applicable to the *same loss.*' [Citation.]" (*Fire Ins. Exchange* v. *American States Ins. Co., supra,* 39 Cal.App.4th at p. 660, italics in original.)

■ Primary coverage provides immediate coverage upon the "occurrence" of a "loss" or the "happening" of an "event" giving rise to liability. (Croskey et al., Cal. practice Guide: Insurance Litigation 2, *supra,* ¶ 8:75, pp. 8-23 to 8-24.) It is defined as "insurance coverage whereby, *under the terms of the policy*, liability attaches *immediately* upon the happening of the occurrence that gives rise to liability. [Citation.]" (*Olympic Ins. Co.* v. *Employers Surplus Lines Ins. Co.* (1981) 126 Cal.App.3d 593, 597 [178 Cal.Rptr. 908], italics in original.) In the context of liability insurance, a primary insurer generally has the *primary* duty to defend and to indemnify the insured, unless otherwise excused or excluded by specific policy language. (Croskey et al., *supra,* ¶ 8:75, pp. 8-23 to 8-24.) Excess insurance provides coverage after other identified insurance is no longer on the risk. "Excess" coverage means "coverage whereby, *under the terms of the policy*, liability attaches only after a predetermined amount of primary coverage has been exhausted." (*Olympic Ins. Co.* v. *Employers Surplus Lines Ins. Co., supra,* 126 Cal.App.3d at p. 598, italics in original; Croskey et al., *supra,* ¶ 8:76, p. 8-24.)

Contractual terms of insurance coverage are honored whenever possible. The courts will therefore generally honor the language of excess "other insurance" clauses when no prejudice to the interests of the insured will ensue. However, there are many exceptions. For example, where two or more primary insurers' policies contain excess "other insurance" clauses

purporting to be excess to each other, the conflicting clauses will be ignored and the loss prorated among the insurers on the ground the insured would otherwise be deprived of protection. (*Olympic Ins. Co.* v. *Employers Surplus Lines Ins. Co., supra,* 126 Cal.App.3d at p. 599; Croskey et al., Cal. Practice Guide: Insurance Litigation 2, *supra,* ¶¶ 8:32-8:33, pp. 8-6 to 8-7.) Thus, although a true excess insurer—one that is solely and explicitly an excess insurer providing only secondary coverage—has no duty to defend or indemnify until all the underlying primary coverage is exhausted or otherwise not on the risk, *primary* insurers with conflicting excess "other insurance" clauses *can* have immediate defense obligations. (*Continental Cas. Co.* v. *Zurich Ins. Co., supra,* 57 Cal.2d at pp. 34-38; Croskey et al., *supra,* ¶ 8:79.1, p. 8-26.)

"Excess-only" provisions often collide with "pro rata" provisions. The Supreme Court has "expressly decline[d] to formulate a definitive rule applicable in every case in light of varying equitable considerations which may arise, and which affect the insured and the primary and excess carriers, and which depend upon the particular policies of insurance, the nature of the claim made, and the relation of the insured to the insurers. [Citation.]" (*Signal Companies, Inc.* v. *Harbor Ins. Co., supra,* 27 Cal.3d at p. 369.) Although it is difficult to harmonize the many cases dealing with this situation, several recent opinions of the Courts of Appeal have held that in cases of conflict between liability insurance policies stating coverage is excess over all other available insurance and liability insurance policies providing for pro rata contribution, the "excess-only" policies must contribute pro rata to the coverage afforded by the "proration-only" polices. (*Fire Ins. Exchange* v. *American States Ins. Co., supra,* 39 Cal.App.4th at p. 659 & fn. 1; *CSE Ins. Group* v. *Northbrook Property & Casualty Co., supra,* 23 Cal.App.4th at pp. 1842-1846; *Hartford Accident & Indemnity Co.* v. *Sequoia Ins. Co.* (1989) 211 Cal.App.3d 1285, 1302 [260 Cal.Rptr. 190]; *Employers Reinsurance Corp.* v. *Phoenix Ins. Co.* (1986)186 Cal.App.3d 545, 556-559 [230 Cal.Rptr. 792].)

These holdings are based on a variety of public policy considerations. "Excess-only" provisions in otherwise primary liability insurance policies have been analogized to so-called "escape" clauses whereby coverage purports to disappear in the presence of other insurance. Such "escape" clauses are generally disfavored as a matter of public policy. (*Argonaut Ins. Co.* v. *Transport Indem. Co.* (1972) 6 Cal.3d 496, 507-508 [99 Cal.Rptr. 617, 492 P.2d 673]; *CSE Ins. Group* v. *Northbrook Property & Casualty Co., supra,* 23 Cal.App.4th at p. 1845; *Peerless Cas. Co.* v. *Continental Cas. Co.* (1956) 144 Cal.App.2d 617, 623 [301 P.2d 602]; Croskey et al., Cal. Practice Guide:

Insurance Litigation 2, *supra,* ¶¶ 8:20-8:22, p. 8-4.) In cases of mutually irreconcilable "excess other insurance" provisions, the law generally favors proration among carriers. (*Continental Cas. Co.* v. *Zurich Ins. Co., supra,* 57 Cal.2d at pp. 34-38; *Fire Ins. Exchange* v. *American States Ins. Co., supra,* 39 Cal.App.4th at p. 659 & fn. 1; *Employers Reinsurance Corp.* v. *Phoenix Ins. Co., supra,* 186 Cal.App.3d at pp. 556-559; *Olympic Ins. Co.* v. *Employers Surplus Lines Ins. Co., supra,* 126 Cal.App.3d at p. 599; *Liberty Mutual Ins. Co.* v. *Truck Ins. Exchange* (1966) 245 Or. 30 [420 P.2d 66, 69-71]; Croskey et al., *supra,* ¶¶ 8:32-8:38, pp. 8-6 to 8-8.) Several courts have noted that imposing the entire liability for a loss on the insurer with a policy providing for pro rata coverage would annul that policy's language, and create the anomaly that courts will only predictably enforce proration between policies when they all have conflicting "excess other insurance" language *barring* proration. (*CSE Ins. Group* v. *Northbrook Property & Casualty Co., supra,* 23 Cal.App.4th at pp. 1845-1846; cf. *Truck Ins. Exchange* v. *Torres* (1961) 193 Cal.App.2d 483, 490-492 [14 Cal.Rptr. 408].) Giving "excess other insurance" clauses priority over policies providing for pro rata apportionment of liability among policies is completely unrelated to the original historical purpose of such "other insurance" clauses, which was to prevent multiple recoveries by *insureds* in cases of overlapping insurance policies providing coverage for the same loss. For these reasons, among others, Division One of this court recently reaffirmed that "[t]he general rule, when multiple policies share the same risk but have inconsistent 'other insurance' clauses, is to prorate according to the policy limits." (*Armstrong World Industries, Inc.* v. *Aetna Casualty & Surety Co.* (1996) 45 Cal.App.4th 1, 52 [52 Cal.Rptr.2d 690].)[9]

As discussed, the rules with regard to equitable contribution *among insurers* are different from those applicable to the relationship between an insurer and its insured. ▉ In considering the policies in this case, we start with the fundamental principle affirmed by the Supreme Court that " '[t]he reciprocal rights and duties of several insurers who have covered the same event do not arise out of contract, for their agreements are not with each other. . . . Their respective obligations flow from equitable principles designed to accomplish ultimate justice in the bearing of a specific burden. As these principles do not stem from agreement between the insurers their

---

[9]"As we have explained . . . , apportionment among multiple insurers must be distinguished from apportionment between an insurer and its insured. When multiple policies are triggered on a single claim, the insurers' liability is apportioned pursuant to the 'other insurance' clauses of the polices [citation] *or* under the equitable doctrine of contribution [citations]. That apportionment, however, has no bearing upon the insurers' obligations to the policyholder. [Citation.] A pro rata allocation among insurers 'does not reduce their respective obligations to their insured.' [Citation.] The insurers' contractual obligation to the policyholder is to cover the full extent of the policyholder's liability (up to the policy limits)." (*Id.* at pp. 105-106, italics added.)

application is not controlled by the language of their contracts with the respective policy holders.' [Citation.]" (*Signal Companies, Inc.* v. *Harbor Ins. Co., supra,* 27 Cal.3d at p. 369.)

Here, all of the applicable one-year policies of both insurers, including the four Fireman's Fund policies with "excess other insurance" endorsements, were purchased as general liability policies, *not* as "umbrella" policies expressly providing *only* excess insurance "secondary" to another carrier's primary insurance. During the four-year time period from November 14, 1988, to November 14, 1992, that the four 1-year Fireman's Fund policies at issue were in effect, the insured had *no other insurance.* Clearly, these policies were purchased as primary insurance, and were intended as such.[10]

Moreover, even under the "excess other insurance" policy endorsements at issue, Fireman's Fund was contractually obligated to undertake its insured's defense. If under its "excess other insurance" provisions Fireman's Fund intended ultimately to shift the burden of defense to Maryland, it could easily have attempted to do so prior to the settlement of the underlying lawsuit against Hanf. Alternatively, it could have intervened in its insured's lawsuit against Maryland in order to impose the burden on Maryland prior to the settlement of that lawsuit. Because Fireman's Fund did not do so, there appears to be little *equitable* reason now for shifting to Maryland the bulk of Fireman's Fund's pro rata share of the defense costs which it had previously incurred in accordance with the express provisions of its *own* policies. (Cf. *Signal Companies, Inc.* v. *Harbor Ins. Co., supra,* 27 Cal.3d at pp. 369-371.)

Under these circumstances, we conclude the trial court correctly made a pro rata allocation of the two insurers' obligations for equitable contribution to the costs of indemnification and defense based on their respective total times on the risk, *including* that period covered by the four Fireman's Fund policies with "excess other insurance" clauses. (*Continental Cas. Co.* v. *Zurich Ins. Co., supra,* 57 Cal.2d at pp. 35-38; *Herrick Corp.* v. *Canadian Ins. Co., supra,* 29 Cal.App.4th at p. 759.)

C. *Maryland Appeal: Equal Allocation of Defense and Indemnity Costs*

Maryland separately appeals from the trial court's allocation of defense and indemnification costs, arguing that it was error for the trial court (a) to

---

[10]At oral argument, counsel for Fireman's Fund expressly acknowledged that all of the one-year liability insurance policies it issued to Hanf were primary insurance polices, including the ones with "excess other insurance" clauses.

credit Fireman's Fund for the full $100,000 amount paid in settlement of the underlying lawsuit against Hanf; and (b) to split the allocation evenly between the parties on a 50-50 basis. Both contentions are without merit.

Contrary to Maryland's assertion, there is no evidence it has borne *any* of the costs of indemnifying its insured, much less half the $100,000 it admits Fireman's Fund "fronted" at the time of the settlement of the underlying lawsuit against Hanf. Although Maryland ·may nominally have "assumed responsibility" for Hanf's promissory note to Fireman's Fund, it has in fact never made any payment on that obligation. Moreover, it seems clear from the tenor of Maryland's settlement with Hanf that Maryland fully intended to dispute or deny any obligation on its part to pay Fireman's Fund on the note. Fireman's Fund never amended its complaint against Maryland for contribution to include a cause of action for enforcement of the promissory note. Instead, by crediting Fireman's Fund for the full amount of the $100,000 settlement, the trial court clearly intended to award Fireman's Fund what Maryland already owed it on the promissory note. This was well within the trial court's equitable jurisdiction and discretion to grant specific relief disposing of the whole controversy between the parties in order to avoid a multiplicity of suits. (*Watson* v. *Sutro* (1890) 86 Cal. 500, 528 [24 P. 172]; 11 Witkin, Summary of Cal. Law, *supra*, Equity, § 2, p. 680.) There was no error in allocating the cost of indemnifying the parties' insured on an equal basis.

Maryland also asserts that it deserves a setoff in the amount of $5,500 for being on the risk only 44.5 percent of the time, rather than half. The record shows that the trial court exercised its discretion to allocate defense and indemnification costs on a 50-50 basis as a matter of equity, based on the parties' overlapping one-year insurance policies between 1978 and 1992. The court determined that Maryland and Fireman's Fund had each provided eight 1-year liability insurance policies to their mutual insured, Hanf, during the relevant time period. ▮▮▮ A trial court's determination of the correct allocation to impose for purposes of contribution is a matter of distributive justice and equity, not of contractual specifics. (*Signal Companies, Inc.* v. *Harbor Ins. Co., supra,* 27 Cal.3d at p. 369.) In view of the fact Fireman's Fund stepped into the breach to undertake the defense of its insured when Maryland refused to accept the tender of defense despite its obligation to do so, the 50-50 allocation of defense costs in this case was well within the trial court's equitable discretion. (*Continental Cas. Co.* v. *Zurich Ins. Co., supra,* 57 Cal.2d at pp. 35-38.) Any discrepancy based on the actual number of months each insurer was "on the risk" was truly de minimis.

## IV. DISPOSITION

The judgment is affirmed. Each side shall bear its own costs on appeal.

Hanlon, P. J., and Reardon, J., concurred.