Filed 11/14/22 Truck Ins. Exchange v. Federal Ins. Co. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| TRUCK INSURANCE EXCHANGE, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> FEDERAL INSURANCE COMPANY et al., <br><br> Defendants and Respondents. | B298906 <br><br><br> (Los Angeles County Super. Ct. No. BC534069) |
| FIRST STATE INSURANCE COMPANY, <br><br> Cross-complainant and Appellant, <br><br> v. <br><br> FEDERAL INSURANCE COMPANY, <br><br> Cross-defendant and Respondent. | B311639 <br><br><br> (Los Angeles County Super. Ct. No. BC534069) |

APPEALS from a judgment of the Superior Court of Los Angeles County, William F. Highberger, Judge. Affirmed as to B298906; reversed in part and remanded as to B311639.

Pia Hoyt, Scott R. Hoyt and John P. Mertens for Plaintiff and Appellant Truck Insurance Exchange.

Schwartz & Janzen, Steven H. Schwartz; Wiggin and Dana, Aaron S. Bayer and Anjali S. Dalal for Defendant, Respondent, Cross-complainant, and Appellant First State Insurance Company.

Chamberlin & Keaster, Kirk C. Chamberlin and Michael C. Denlinger for Cross-defendant and Respondent Federal Insurance Company.

_____

These consolidated appeals concern the interpretation of a settlement agreement between a primary insurer and two excess insurers.

In the first appeal, case No. B298906, plaintiff and appellant Truck Insurance Exchange (Truck), the primary insurer, appeals the trial court's judgment following the court's grant of summary adjudication in favor of defendant and respondent excess insurers Federal Insurance Company (Federal) and First State Insurance Company (First State) (collectively the Excess Insurers) on Truck's third cause of action for contribution. In its contribution cause of action, Truck sought reimbursement from the Excess Insurers of indemnity payments and defense fees that Truck made in the underlying bodily injury actions filed against its insured, Moldex Metrics, Inc. (Moldex). Truck incurred the indemnity and fee payments at issue here after Truck entered into a settlement agreement with the Excess Insurers on July 24, 2013 (the Settlement Agreement). Truck

2

contends that the trial court incorrectly interpreted the Settlement Agreement to constitute a waiver of Truck's rights of subrogation as a basis to seek reimbursement from the Excess Insurers. Specifically, Truck argues that language in the Settlement Agreement preserving its right to seek "contribution" encompassed its rights to subrogation, as the right to contribution is not available to a primary insurer seeking reimbursement from excess insurers. We conclude that the trial court did not err by granting summary adjudication as to Truck's third cause of action for contribution. We affirm the trial court's judgment as to Truck in case No. B298906.

In the second appeal, case No. B311639, cross-complainant and appellant First State contends that the trial court erred in ruling that First State waived its right to reimbursement from Federal per the terms of the Settlement Agreement. First State asserts that the trial court's orders granting Federal's motion for summary adjudication and its motion in limine must be reversed. We reverse the judgment as to the portion of First State's claim for declaratory relief in its cross-complaint relating to its entitlement to reimbursement from Federal for the time periods prior to July 2013 and after January 30, 2018. The trial court's January 16, 2020 order granting summary adjudication in Federal's favor and the trial court's August 7, 2019 order granting Federal's motion in limine are also reversed, and the matter is remanded to the trial court for further proceedings in case No. B311639.

BACKGROUND

The Cases Against Moldex and Its Coverage Dispute

The insured, Moldex, manufactures respiratory protection products used by industrial workers. Federal issued a commercial umbrella policy to Moldex, which was in effect from August 1, 1982 to June 1, 1984, and provided policy limits of $5 million. First State issued an umbrella policy that was effective from June 18, 1984 to June 18, 1985, which provided policy limits of $15 million.

Truck issued a commercial liability policy to Moldex with a policy period from June 16 to July 25, 1986. The policy limits were $500,000 per occurrence and in the aggregate, exclusive of defense costs. Under the policy, Truck had a duty to defend any suit against Moldex seeking bodily injury or property damages, even if the allegations were groundless, false, or fraudulent.

Beginning in 1986, lawsuits were filed against Moldex alleging exposure to silica and other hazardous substances because its respiratory protection devices failed. Moldex gave notice of the claims to primary liability insurers other than Truck, who defended and indemnified Moldex. When the primary insurers' liability limits were exhausted in 2003, Moldex gave notice of claims to umbrella and excess insurers, including Federal and First State.

In December 2004, Moldex tendered actions to Truck under its policy. In September 2007, Federal filed a complaint in *Federal Insurance Co. v. Moldex-Metric, Inc.*, Los Angeles Superior Court case No. BC377842, to determine coverage for actions against Moldex that were tendered to Truck (the

4

Coverage Dispute). In August 2011, the trial court ruled that Truck was required to reimburse Federal and First State for defense fees and indemnity, plus prejudgment interest. Federal was owed defense costs of $3,854,390.61 and indemnity of $98,212.50; First State was owed $5,000,412. Truck appealed the trial court's ruling and began defending Moldex in the actions.

On January 24, 2012, Truck's appeal in the Coverage Dispute was denied as premature, because there was no final appealable judgment. On January 30, 2012, Truck entered into a settlement agreement with the O'Quinn Law Firm, which represented Moldex claimants in Texas and Mississippi (the O'Quinn Settlement). Truck settled with several hundred claimants in Texas who were or had been represented by O'Quinn. The O'Quinn Settlement did not resolve actions in Mississippi. In the period prior to the O'Quinn Settlement, Truck had paid $10,000 to settle claims against Moldex. After reaching the settlement with O'Quinn, Truck deposited $500,000 in trust for O'Quinn to use to pay claimants in exchange for releases in favor of Moldex.

On February 14, 2012, Truck notified Moldex and the excess insurers that the claims had been settled. Truck stated that it had exhausted its policy limit of $500,000, and was returning the defense and indemnity of Moldex to the Excess Insurers.

Between March 2012 and July 2013, 483 claimants received $409,677.50 under the O'Quinn Settlement in return for releases. The law firm holding the funds that Truck had placed in trust returned the remainder to Truck.

On February 28, 2013, the trial court entered a final judgment against Truck in the Coverage Dispute, finding Truck

had a duty to defend and indemnify Moldex with respect to the actions tendered. The judgment required Truck to reimburse Federal for defense costs of $3,854,390.61 and indemnity of $98,212.50, and reimburse First State for defense costs of $5,035,006.25 and indemnity of $230,875, plus interest. Truck filed an appeal.

The Settlement Agreement

In July 2013, Truck entered into the Settlement Agreement with Federal and First State to resolve the Coverage Dispute. Truck agreed to pay a total of $11,000,000 based on the judgment in the Coverage Dispute, which included $8,889,396.86 of defense costs and $329,087.50 of indemnity toward Truck's aggregate policy limit. The "Parties each release[d] each other from any and all Claims that are, were[,] or could have been asserted in the Action (including, without limitation, the Coverage Dispute and the Appeals." The releases "shall not apply to, have any effect on[,] or constitute a release, waiver, or assignment of: . . . (b) any of Federal's and/or [First State]'s rights against any Person other than Truck . . . ; or (d) to the extent such rights exist, any of Truck's rights to claim contribution for any indemnity paid over its limit and defense fees incurred therewith." Truck agreed that it would continue to defend and indemnify Moldex for the underlying claims "until such time as Truck establishes that it has properly exhausted the Truck Policy."

The Side Agreement

Also in July 2013, First State and Federal entered into a settlement agreement (the Side Agreement),[1] addressing how Moldex's claims would be "handled and allocated between them should Truck establish exhaustion." The Side Agreement stated, "on July 22, 2013,[2] Federal, First State and Truck Insurance Exchange . . . entered into a Settlement Agreement and Release . . . to resolve certain disputes between Federal and First State, on the one hand, and Truck, on the other hand, regarding the extent to which Truck is obligated to reimburse Federal and First State for amounts they paid for Moldex-Metrix, Inc.'s . . . defense and indemnity." It further stated that Truck would "continue to defend and indemnify Moldex . . . until such time as Truck establishes that it has properly exhausted the Truck Policy" and upon exhaustion would work with "Moldex, Federal, and First State to ensure an orderly transition of the defense."

The Side Agreement detailed the division of costs between the Excess Insurers in the event that Truck established exhaustion. The Excess Insurers agreed that the Side Agreement would "remain in effect until the earliest of (a) the exhaustion of one of the Parties policies; (b) the discovery of additional coverage applicable to Moldex's claims; (c) the entry into a subsequent cost

---

[1] Federal executed the Side Agreement on July 22, 2013, and First State executed the Side Agreement on July 23, 2013.

[2] The Settlement Agreement was actually executed on July 24, 2013.

share between the Parties following entry of the Truck Settlement; or (d) by written notice of one of the parties hereto to the representative identified in the Truck Settlement.  The earliest that a Party may terminate pursuant to (d) is thirty (30) days after one (or both) of the Parties hereto begins to defend following notification of Truck's exhaustion."

PROCEDURAL HISTORY

On January 23, 2014, Truck filed a complaint for a declaration as to Moldex and the Excess Insurers that the policy limit had been exhausted in July 2013, a declaration as to Moldex that it owed no further duty to defend and indemnify Moldex because the policy had been exhausted, and reimbursement or contribution as against the Excess Insurers for indemnity of $248,765 paid in excess of Truck's policy limit.  Truck also sought a declaration awarding it defense costs paid in the underlying lawsuits after Truck's policy was exhausted.

A bench trial began on January 11, 2016.  On March 25, 2016, the trial court entered a statement of decision.  The court found that Truck's payments did not apply to exhaust the policy. The trial court entered judgment in favor of Moldex, Federal, and First State on March 25, 2016.

Truck filed a timely notice of appeal from the judgment.

First Appeal

On appeal, another panel of this court reversed the trial court's judgment in *Truck Insurance Exchange v. Moldex-Metric Inc* (May 18, 2017, B272378) [nonpub. opn.], holding that Truck

8

was entitled to a declaration that the policy limits had been exhausted in July 2013, and that Truck had no further duty to defend or indemnify Moldex. Because the trial court did not reach the issue of Truck's right to contribution from the Excess Insurers, the panel remanded the matter for further proceedings on the contribution cause of action.

The Supreme Court denied review on August 9, 2017.

Remand to the Trial Court

Motions for Summary Adjudication (Case No. B298906)

Following remand, on December 1, 2017, Federal submitted a motion for summary adjudication asserting that it did not have a duty to defend Moldex under its policy but had paid as a volunteer, and thus had no responsibility for post-exhaustion defense fees. The trial court granted the motion.[3]

On September 28, 2018, First State sought summary adjudication asserting that it was not liable to Truck for indemnity or defense fees, which Federal joined. The trial court granted the motion. Specifically, the court determined that Truck waived, in the Settlement Agreement, its right to reimbursement or indemnity of money paid in excess of its policy

---

[3] In case No, B298906, Truck seeks reimbursement for its overpaid indemnity from the Excess Insurers and reimbursement of defense fees from First State. Truck concedes that it did not appeal the trial court's August 1, 2018 ruling on Federal's motion for summary adjudication regarding defense fees, and that Federal is not obligated to reimburse Truck for defense fees regardless of the outcome of this appeal.

limits and associated defense fees.  The trial court emphasized that its determination was based solely on an interpretation of the Settlement Agreement—a "one-off contract"—and that neither party offered extrinsic evidence or asserted that consideration of extrinsic evidence was necessary to interpret the Settlement Agreement.

The trial court agreed with the Excess Insurers that the key terms of the Settlement Agreement were contained in section 4.01.  The court interpreted the phrase "until such time as Truck establishes that it has properly exhausted the Truck Policy" to mean that Truck's duty to defend Moldex continued until August 9, 2017, the date the Supreme Court denied review of the appellate court's decision, thereby establishing exhaustion. (Boldface omitted.)  The court reasoned that if it interpreted the phrase to mean Truck's duty to defend Moldex ended when the dollar policy limits were exhausted in July 2013, the provisions for orderly transition within 60 days would not make sense.  The trial court concluded that its reasoning was sufficient to resolve the matter, as Truck did not assert that it incurred expenses after August 9, 2017.

The trial court further explained that the terms "[c]laims" and "[u]nderlying [c]laims" were defined very broadly in the Settlement Agreement and encompassed claims not yet presented to Moldex or its insurers as of July 24, 2013 "if they fell into the general basket of silicosis claims resulting from alleged negligent design or manufacture of Moldex respiratory masks."  The court concluded that Truck took on this contractual duty in exchange for "receiving a discount of millions of dollars off the amount of the then-existing Judgment in favor of the Excess Carriers."

10

Finally, the trial court stated that the only claims available to Truck against Federal and First State were claims of subrogation, which Truck waived by entering the Settlement Agreement. Specifically, the court noted that the language in section 3.02 of the Settlement Agreement retained only Truck's right to contribution, but not its right to subrogation. The Settlement Agreement was negotiated by sophisticated insurance litigation lawyers and should have included the term "subrogation" if a right to subrogation was to be preserved.

Federal also submitted, on September 28, 2018, its own motion for summary adjudication concerning Truck's cause of action against Federal for contribution and reimbursement. The court ruled that Federal's motion was moot in light of its grant of First State's motion and Federal's joinder in First State's motion.

In case No. B298906, Truck appeals the trial court's rulings on First State's motion for summary adjudication, in which Federal joined.

Cross-complaint (Case No. B311639)

On November 16, 2018, in the second phase of the case following remand, First State filed a cross-complaint against Federal seeking a declaration that Federal had a duty to reimburse First State for post-exhaustion defense fees and costs. First State alleged that as a result of the appellate court's May 2017 decision, during or about June 2017, Moldex selected First State to fund the defense and settlement of claims against it. Truck discontinued its defense and indemnification of Moldex in August 2017, and First State began its defense and indemnification of Moldex that same month. Despite the terms of

11

the Side Agreement, Federal had not paid or contributed to the costs First State incurred.  On or about January 30, 2018, Federal sought to terminate its participation in the Side Agreement by written notice to First State as provided for in the Side Agreement.

Federal filed a motion in limine to preclude First State from introducing evidence regarding contribution for indemnity payments or defense fees and costs that First State had made prior to July 2017 and after January 30, 2018.[4]  The motion in limine did not address the Side Agreement or any amounts owed between July 2017, when First State began its defense and indemnification of Moldex, and January 30, 2018, the date that Federal withdrew from the Side Agreement.  Federal argued that (1) First State released it from any potential right of reimbursement under the terms of the Settlement Agreement; and (2) First State admitted that the parties released each other from any potential right of reimbursement pursuant to the terms of the Settlement Agreement.

On August 7, 2019, the trial court granted the motion in limine to the extent that First State effectively released, by the terms of the Settlement Agreement, any claims prior to July 2013 and after January 30, 2018.  The trial court noted that its grant of the motion would not dispose of all issues between Federal and First State on First State's cross-complaint:  First State's claim for reimbursement for defense costs incurred between July 2017 and January 30, 2018 would still be at issue in trial.

---

[4] Federal also filed a cross-complaint against First State, but later requested that it be dismissed without prejudice.

Federal subsequently filed a motion for summary adjudication. Federal filed the operative amended motion for summary adjudication on December 23, 2019. Federal sought summary adjudication regarding First State's claim for declaratory relief that it was entitled to reimbursement from Federal of indemnity payments and defense costs that First State incurred as to Moldex for three time periods: (a) before July 2013, (b) after January 30, 2018, and (c) between July 2017 and January 30, 2018. The trial court granted the motion as to periods (a) and (b), but reserved the question of the period between July 2017 and January 30, 2018 for trial. With respect to periods (a) and (b), the court granted the motion for the reasons set forth in its ruling on the motion in limine.

A bench trial on First State's cross-complaint was held on November 17 and 18, 2020. The trial court rendered its judgment on January 27, 2021. The court declared that defense costs incurred defending Moldex between the effective date of the Side Agreement on July 22, 2013, and January 30, 2018, the date that Federal terminated the Side Agreement, were apportioned on a 75 percent basis to Federal and 25 percent basis to First State. The court further declared that all indemnity costs incurred on behalf of Moldex between July 22, 2013 and January 30, 2018, where the claimant's date of first exposure was on or before August 1, 1981, were apportioned on a 75 percent basis to Federal and 25 percent basis to First State, and where the claimant's date of first exposure was between August 2, 1981, and June 1, 1984, indemnity costs were apportioned between Federal and First State on a pro rata basis.

Neither party appealed the trial court's rulings following the bench trial. In case No. B311639, First State challenges the

trial court's rulings on the motion in limine and motion for summary adjudication.

## DISCUSSION

Summary Adjudication

"A motion for summary adjudication may be made by itself or as an alternative to a motion for summary judgment and shall proceed in all procedural respects as a motion for summary judgment." (Code Civ. Proc., § 437c, subd. (f)(2).) A defendant can satisfy its burden upon a motion for summary adjudication either by producing evidence which negates an element of the cause of action, or by showing, through the plaintiff's or cross-complainant's deficient discovery responses, that the plaintiff does not possess, and cannot reasonably obtain, evidence to establish that element. (*Villa v. McFerren* (1995) 35 Cal.App.4th 733, 747–749; *Union Bank v. Superior Court* (1995) 31 Cal.App.4th 573, 580–581.) Once the defendant has met that burden, the burden shifts to the plaintiff to show that a triable issue of one or more material facts exists. (Code Civ. Proc., § 437c, subd. (p)(2).) In opposing the motion, the plaintiff may not simply rely upon allegations or denials of the pleadings; the plaintiff must set forth specific facts showing that a triable issue of material fact exists. (*Ibid*.; *Union Bank*, at pp. 580–581, 593.)

On appeal, we exercise "an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is

14

entitled to judgment as a matter of law." (*Iverson v. Muroc Unified School Dist.* (1995) 32 Cal.App.4th 218, 222.)

Principles of Contract Interpretation

A settlement agreement is a contract governed by standard rules of contract interpretation. (*Canaan Taiwanese Christian Church v. All World Mission Ministries* (2012) 211 Cal.App.4th 1115, 1123.) The " 'interpretation of a contract is subject to de novo review where the interpretation does not turn on the credibility of extrinsic evidence.' " (*People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.* (2003) 107 Cal.App.4th 516, 520 (*R.J. Reynolds*).)

" ' "When a dispute arises over the meaning of contract language, the first question to be decided is whether the language is 'reasonably susceptible' to the interpretation urged by the party. If it is not, the case is over. [Citation.] If the court decides the language is reasonably susceptible to the interpretation urged, the court moves to the second question: what did the parties intend the language to mean?" ' [Citation.] 'In interpreting an unambiguous contractual provision we are bound to give effect to the plain and ordinary meaning of the language used by the parties.' [Citation.] Thus, where ' "contract language is clear and explicit and does not lead to absurd results, we ascertain intent from the written terms and go no further." ' " (*R.J. Reynolds*, *supra*, 107 Cal.App.4th at p. 524.)

" 'If the contract is capable of more than one reasonable interpretation, it is ambiguous [citations], and it is the court's task to determine the ultimate construction to be placed on the ambiguous language by applying the standard rules of

15

interpretation in order to give effect to the mutual intention of the parties [citation].' [Citation.] However, the 'mere fact that a word or phrase in a [contract] may have multiple meanings does not create an ambiguity.' " (*R.J. Reynolds*, *supra*, 107 Cal.App.4th at pp. 524–525.)

" 'The goal of contractual interpretation is to determine and give effect to the mutual intention of the parties.' " (*R.J. Reynolds*, *supra*, 107 Cal.App.4th at p. 525.) " 'The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other.' ([Civ. Code,] § 1641.) 'A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties.' ([Civ. Code,] § 1643.) 'The words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning; unless used by the parties in a technical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed.' ([Civ. Code,] § 1644.) [¶] In sum, courts must give a ' "reasonable and commonsense interpretation" ' of a contract consistent with the parties' apparent intent." (*R.J. Reynolds*, at pp. 525–526.) A word or phrase used in a certain sense in one part of a contract is deemed to have the same meaning throughout the contract in the absence of anything in the contract suggesting otherwise. (*Id.* at p. 526.)

Truck Is Not Entitled to Contribution from the Excess Insurers

In case No. B298906, Truck appeals the trial court's grant of summary adjudication in favor of First State and Federal on

16

its third cause of action for contribution. Truck contends that it is entitled to reimbursement from the Excess Insurers for indemnity costs that it incurred after its policy was exhausted in July 2013, and reimbursement from First State for defense fees incurred after July 2013. Truck argues that (1) the trial court's ruling directly contradicts this court's holding, in the prior appeal, that Truck did not waive reimbursement of indemnity and defense costs in the Settlement Agreement, (2) the trial court misinterpreted the Settlement Agreement to operate as a waiver of reimbursement rights for amounts paid prior to the issuance of the appellate opinion on May 18, 2017, rather than only those paid prior to the date of exhaustion in July 2013, and (3) the trial court misinterpreted the Settlement Agreement to create an artificial distinction between contribution and subrogation rights to find that Truck waived its subrogation rights. We disagree with each of Truck's contentions of error.

(1) The prior appeal

Truck's assertion that this court previously held that Truck did not waive its right to recover payments mischaracterizes the prior appellate decision. This court remanded the matter to the trial court to make a determination regarding Truck's cause of action for contribution in the first instance, and offered no opinion as to the outcome of that inquiry. The panel's statement in the "**FACTS**" section of its opinion that the "releases [in the Settlement Agreement] did not constitute a waiver, to the extent such rights exist, of any of Truck's rights to claim contribution for any indemnity paid over its limit and defense fees incurred therewith" did not interpret the term "contribution" to include a right to subrogation or entitle Truck to reimbursement from the Excess Insurers for amounts incurred after a specific date.

17

Moreover, the panel's holding that the settlement agreement between Moldex and Truck waived all of Moldex's bad faith claims because the term "bad faith" must be interpreted broadly in the context of that settlement agreement was not tantamount to a holding that the term "contribution" in the wholly separate Settlement Agreement at issue here must be interpreted broadly to include subrogation rights.

(2) Settlement Agreement waiver of rights

We reject Truck's assertion that the Settlement Agreement merely reiterated Truck's obligation under California law to continue to defend Moldex until exhaustion was accepted by Moldex or to the date of exhaustion as determined by a court,[5] but did not impose specific obligations upon Truck beyond those under California law.  Section IV of the Settlement Agreement, entitled "**ADDITIONAL AGREEMENTS**" states:

"Truck agrees that it will continue to defend and indemnify Moldex for the Underlying Claims until such time as Truck establishes that it has properly exhausted the Truck Policy.  In the event that Truck establishes proper exhaustion of the Truck Policy, Truck agrees to work with Moldex, Federal, and First State to ensure an orderly transition of the defense over a reasonable period, not to exceed sixty (60) days."

---

[5] A primary insurer's duty to defend continues until exhaustion is accepted by the insured or established by a court. (*Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 301.)  After such a determination is made, the primary insurer may seek reimbursement from excess insurers for indemnity payments and defense fees incurred subsequent to the date of exhaustion. (*Aetna Cas. & Surety Co. v. Certain Underwriters* (1976) 56 Cal.App.3d 791, 801.)

18

Truck's interpretation—that the Settlement Agreement only imposed obligations to defend and indemnify Moldex up to the date of exhaustion—is not reasonable for several reasons. First, the phrase "until such time as Truck establishes" clearly contemplates that the condition precedent to the fulfillment of Truck's obligations is the legal determination that exhaustion previously occurred, not the exhaustion of the dollar amount of Truck's policy. Had the parties intended for the date of exhaustion to be operative, they could have specified that Truck's duty would end after the date that the dollar policy limits were reached, as determined by a court or by agreement of the insured. We observe that the interpretation Truck urges undermines its argument that the Settlement Agreement merely reiterates its obligation under California law. Under Truck's interpretation, the Settlement Agreement would relieve Truck of the obligation to continue its defense of Moldex. Such an arrangement between the parties, which would both discount the amount that Truck owed under the trial court's judgment and relieve it of its legal obligation to continue to defend Moldex under California law, is unreasonable.

Second, we will not interpret the word "establishes" to have two different meanings within the same provision. (See *R.J. Reynolds*, *supra*, 107 Cal.App.4th at p. 526 [words used in a certain sense in one part of contract are normally deemed to have same meaning throughout contract].) We agree with the trial court that the provision for orderly transition "[i]n the event that Truck establishes [that it has] proper[ly] exhaust[ed] . . . the Truck Policy," makes no sense and could not be carried out if we were to interpret Truck's obligation to end on the date of exhaustion, as that date would be unknown until such time as it

19

was later determined by the court.  It is impossible to transition within 60 days of an unknown date.  (See Civ. Code, § 1643 [contract should be interpreted to "make it lawful, operative, definite, reasonable, and capable of being carried into effect"].)

Third, the interpretation Truck urges is unreasonable when viewed in the light of the contract as a whole.  The provision is contained in the "**ADDITIONAL AGREEMENTS**" section, with a more limited statement of obligations contained in the "**RECITALS**."[6]  If the provision were merely a recitation of Truck's obligations under California law and not a new and additional contractual obligation that Truck undertook as part of the Settlement Agreement, there would be no need to include it in the additional agreements section in addition to the provision in the recitals.  The structure of the Settlement Agreement indicates that the provision was intended to create an obligation additional to Truck's duties under California law.

Finally, we conclude that exhaustion was established on August 9, 2017, the date that our Supreme Court denied review.  Until that point, the determination was not final because the Supreme Court had authority to reverse the decision of this appellate court.

---

[6] The recitals contain a paragraph that states: "WHEREAS, in approximately June of 2011, Truck began defending Moldex in the Underlying Claims and, as of the date of this Agreement, Truck is defending Moldex in Underlying Claims and has agreed to continue defending Moldex in all Underlying Claims until Truck establishes that the applicable limit of liability under the Truck Policy has been properly exhausted."

(3) Reservation of right to recoup defense fees and indemnity costs

We also reject Truck's assertion that it did not waive, but instead expressly reserved, its right to recoup from First and Federal defense fees and indemnity costs that Truck incurred after the parties entered into the Settlement Agreement.

The release provision contained in paragraph 3.01 of section III of the Settlement Agreement states that "the Parties each release each other from any and all Claims that are, were[,] or could have been asserted in the Action (including, without limitation, the Coverage Dispute and the Appeals)."

We agree with the trial court that, as defined in the Settlement Agreement, the terms "**Underlying Claims**"[7] and "**Claim**"[8] are sufficiently broad to encompass claims not yet tendered to Moldex for silicosis injuries resulting from alleged negligent design or manufacture of Moldex respiratory masks. We conclude that all claims that "are, were[,] or could have been

---

[7] "**Underlying Claims** means any Claim relating to, arising out of, or caused in whole or in part by, in any manner or fashion, asbestos, asbestos-containing products, silica, silica-containing products, or any other alleged hazardous or harmful material, in whole or in part, including mixed dust."

[8] "**Claim** means past, present, or future, claims, demands, actions, causes of action, lawsuits or liabilities of any kind or nature whatsoever, whether known or unknown, whether at law or in equity and regardless of the type of relief sought, and includes but is not limited to claim and demand as those terms are defined in Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as it may be amended."

asserted in the Action" that are not expressly excepted in section III, paragraph 3.02 were expressly waived.

We are not persuaded by Truck's argument that it reserved the right to recoup indemnity costs and defense fees in the exception to the release contained in section III, paragraph 3.02, which states: "The releases set forth in this Section III shall not apply to, or have any effect on[,] or constitute a release, waiver or assignment of . . . (d) to the extent such rights exist, any of Truck's rights to claim contribution for any indemnity paid over its limit and defense fees incurred therewith."

In California, the equitable doctrines of contribution and subrogation are entirely distinct and independent concepts. (*Fireman's Fund Ins. Co. v. Maryland Casualty Co.* (1998) 65 Cal.App.4th 1279, 1291 (*Fireman's Fund*).) While it is true that there was confusion over the distinction between these terms in the past, that distinction has been explained repeatedly and clearly in California cases since the 1990's. (See, e.g., *id.* at pp. 1291–1296; *Herrick Corp. v. Canadian Ins. Co.* (1994) 29 Cal.App.4th 753, 759; *Reliance Nat. Indemnity Co. v. General Star Indemnity Co.* (1999) 72 Cal.App.4th 1063, 1077–1079 (*Reliance*).)

"Subrogation is defined as the substitution of another person in place of the creditor or claimant to whose rights he or she succeeds in relation to the debt or claim. By undertaking to indemnify or pay the principal debtor's obligation to the creditor or claimant, the 'subrogee' is equitably *subrogated* to the claimant (or 'subrogor'), and succeeds to the subrogor's rights against the obligor. (Black's Law Dict. (6th ed.1990) p. 1427, col. 1.) In the case of insurance, subrogation takes the form of an insurer's right to be put in the position of the insured in order to

22

pursue recovery from third parties legally responsible to the insured for a loss which the insurer has both insured and paid." (*Fireman's Fund*, *supra*, 65 Cal.App.4th at pp. 1291–1292.) "The right of subrogation is purely derivative. An insurer entitled to subrogation is in the same position as an assignee of the insured's claim, and succeeds only to the rights of the insured. The subrogated insurer is said to ' "stand in the shoes" ' of its insured, because it has no greater rights than the insured and is subject to the same defenses assertable against the insured. Thus, an insurer cannot acquire by subrogation anything to which the insured has no rights, and may claim no rights which the insured does not have." (*Id.* at p. 1292.)

"Equitable contribution is entirely different. It is the right to recover, not from the party *primarily* liable for the loss, but from a *co-obligor* who *shares* such liability with the party seeking contribution. In the insurance context, the right to contribution arises when several insurers are obligated to indemnify or defend the same loss or claim, and one insurer has paid more than its share of the loss or defended the action without any participation by the others. Where multiple insurance carriers insure the same insured and cover the same risk, each insurer has independent standing to assert a cause of action against its coinsurers for equitable contribution when it has undertaken the defense or indemnification of the common insured. Equitable contribution permits reimbursement to the insurer that paid on the loss for the excess it paid over its proportionate share of the obligation, on the theory that the debt it paid was *equally* and *concurrently* owed by the other insurers and should be shared by them pro rata in proportion to their respective coverage of the

23

risk." (*Fireman's Fund*, *supra*, 65 Cal.App.4th at p. 1293, fn. omitted.)

"As a general rule, there is no contribution between primary and excess carriers." (*Fireman's Fund*, *supra*, 65 Cal.App.4th at p. 1294, fn. 4.) "However, where different insurance carriers cover differing risks and liabilities, they may proceed against each other for reimbursement by subrogation rather than by contribution." (*Reliance*, *supra*, 72 Cal.App.4th at p. 1078.)

Truck argues that the term "contribution" in section III, paragraph 3.02(d) ("to the extent such rights exist, any of Truck's rights to claim contribution for any indemnity paid over its limit and defense fees incurred therewith") should be read to encompass all rights that it may have to reimbursement from First State and Federal, including subrogation. It argues that the distinction between "contribution" and "subrogation" is artificial, and does not take context into account.

As we have discussed, the legal distinction between "contribution" and "subrogation" is an important one, and well-known in the insurance context. "Where[, as here,] words have a definite legal meaning, we presume the parties intended them to have their ordinary legal meaning, unless a contrary intent appears in the instrument." (*Grande v. Eisenhower Medical Center* (2020) 44 Cal.App.5th 1147, 1165.) Moreover, "sophisticated parties should be allowed to strike their own bargains and knowingly and voluntarily contract in a manner in which certain risks are eliminated and, concomitantly, rights are relinquished." (*Brisbane Lodging, L.P. v. Webcor Builders, Inc.* (2013) 216 Cal.App.4th 1249, 1261.) "[W]here the parties are on equal footing and where there was considerable sophisticated

give-and-take over the terms of the contract, those parties should be given the ability to enjoy the freedom of contract and to structure risk shifting as they see fit without judicial intervention." (*Id*. at p. 1263.)

That was the case here. As the trial court observed, the Settlement Agreement was negotiated by experienced insurance litigators on behalf of large insurance companies. In light of the specific legal meaning that "contribution" has in the insurance context, and in the context of claims between primary and excess insurers in particular, it would not be reasonable to assign "contribution" a meaning other than its legal meaning. As Truck has no right of contribution against the Excess Insurers, the exception in section III, paragraph 3.02, subdivision (d) does not entitle it to reimbursement from the Excess Insurers.

We are not otherwise persuaded by Truck's argument that interpreting contribution as distinct from subrogation would lead to an absurd result. Section III, paragraph 3.02, subdivision (d) of the Settlement Agreement can be reasonably interpreted to reserve Truck's claims for contribution from third party primary insurers.

The Settlement Agreement Does Not Bar First State from Seeking Reimbursement from Federal

In case No. B311639, First State appeals the trial court's rulings in its grant of Federal's motion in limine and its motion for summary adjudication that the Settlement Agreement released all claims between First State and Federal. First State argues that the trial court's ruling ignores the plain language and purpose of the Settlement Agreement.

25

We agree with First State that, read as a whole, the Settlement Agreement can only be reasonably interpreted to preserve its claims for reimbursement against Federal. The Settlement Agreement's recitals clearly state the Settlement Agreement's purpose. The Settlement Agreement was intended to resolve "certain disputes [that] have arisen between Federal and First State, on the one hand, and Truck, on the other hand regarding the extent to which Truck is obligated to reimburse Federal and First State for amounts paid for Moldex's defense and indemnity for Underlying Claims, plus interest, during the approximately seven (7) year period of time between December 2004 and June 2011." As First State emphasizes, the Settlement Agreement makes no reference to the resolution of disputes between First State and Federal.

Additionally, the Settlement Agreement unambiguously reserves the Excess Insurer's rights to seek reimbursement from each other. It states in section III, paragraph 3.02: "The releases set forth in this Section III shall not apply to, have any effect on[,] or constitute a release, waiver or assignment of . . . (b) any of Federal's and/or [First State]'s rights against any Person other than Truck." Thus, the declaration in section III, paragraph 3.01 that "the Parties each release each other from any and all Claims that are, were or could have been asserted in the Action" is limited to releases between Truck and the Excess Insurers (i.e. Truck releases First State, First State releases Truck, Truck releases Federal, Federal releases Truck).

The terms of the Settlement Agreement do not prohibit First State from seeking reimbursement from Federal. We reverse the trial court's order granting summary adjudication.[9]

The trial court's grant of motion in limine, which prevented First State from presenting any evidence with respect to the time periods in question, was based on identical reasoning. We review rulings on motions in limine for an abuse of discretion. (*Hernandez v. Paicius* (2003) 109 Cal.App.4th 452, 456, disapproved on another ground by *People v. Freeman* (2010) 47 Cal.4th 993, 1006, fn. 4.) Evidence Code section 354 provides: "A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous exclusion of evidence unless the court which passes upon the effect of the error or errors is of the opinion that the error or errors complained of resulted in a miscarriage of justice and it appears of record that: [¶] (a) The substance, purpose, and relevance of the excluded evidence was made known to the court by the questions asked, an offer of proof, or by any other means; [¶] (b) The rulings of the court made compliance with subdivision (a) futile; or [¶] (c) The evidence was sought by questions asked during cross-examination or recross-examination." A miscarriage of justice should be declared only when the appellate court, after an examination of the entire cause, including the evidence, is of the opinion that it is

---

[9] Having determined that the plain language of the Settlement Agreement does not prohibit First State from seeking reimbursement from Federal, we need not address First State's argument that the Settlement Agreement must be interpreted in conjunction with the Side Agreement or Federal's response thereto.

27

reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error. (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

In this case, the trial court's exclusion of all relevant evidence with respect to the time periods before 2013 and after January 30, 2018 on the erroneous basis that First State had waived its potential claims was an abuse of discretion, and must also be reversed.

## DISPOSITION

In case No. B298906, we affirm the trial court's judgment as to Truck. The trial court did not err by granting summary adjudication as to Truck's third cause of action for contribution. Respondents Federal and First State are awarded costs on appeal as against Truck.

In case No. B311639, we reverse the judgment as to the portion of First State's claim for declaratory relief in its cross-complaint relating to its entitlement to reimbursement from Federal for the time periods prior to July 2013 and after January 30, 2018, and remand to the trial court for further proceedings. We reverse the trial court's January 16, 2020 order granting summary adjudication in Federal's favor, and the trial court's August 7, 2019 order granting Federal's motion in limine. Cross-complainant and appellant First State is awarded its costs on appeal as against Federal.

The judgment is affirmed in all other respects.
NOT TO BE PUBLISHED.


MOOR, Acting P. J.

We concur:


KIM, J.          TAMZARIAN, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

29